CANDICE BRYNER, State Bar No. 192462
TUMY N. NGUYEN, State Bar No. 192268
LAW OFFICES OF M. CANDICE BRYNER
A Professional Corporation
780 Roosevelt, Suite 206
Irvine, California 92620
Telephone: (949) 371-9056
Fax: (949) 656-7380
Candice@brynerlaw.com

Attorneys for Plaintiff
Bradford Billet

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION – LOS ANGELES

BRADFORD BILLET

Plaintiff,

v.

ESTATE OF FRANCINE DREXLER; RYAN DREXLER; HALBERT DREXLER; DENNIS DUBAN; MATT LAROCHELLE; HELENE NISHIZAWA; RICK THIEDIG; TROY L. SATTLER; SATTLER CAPITAL MANAGEMENT, LLC; DUBAN SATTLER AND ASSOCIATES, LLC; DUBAN ACCOUNTANCY, LLP; DLD ACCOUNTANCY LLP; CONSAC LLC, NY; CONSAC LLC, DE; SABRE STREET, LLC; COUNTRY LIFE, LLC; COUNTRY LIFE MANUFACTURING, LLC; CONSAC INDUSTRIES, INC.; MOTOR PARKWAY, LLC; DREXLER ASSOCIATES, LLC; JODI DREXLER-BILLET, individually and as Trustee of the JODI-DREXLER BILLET (2006) DYNASTY TRUST and THE JODI DREXLER-BILLET (2006) LONG TERM TRUST; WESTHAMPTON (2006) LLC; BRIDGEHAMPTON (2006) LLC; AMAGANSETT (2006) LLC; CONSAC MANAGER, LLC; CONSAC RE, LLC; MUSCLEPHARM CORP.; DOES 1-100, INCLUSIVE

Defendants

CASE NO. 17-7900-DMG(JCx)

**COMPLAINT FOR:**

1. **VIOLATION OF THE RACKETEERING INFLUENCED AND CORRUPTION ORGANIZATION ACT ("RICO") [18 U.S.C. § 1961 *et seq]***
2. **CONSPIRACY TO VIOLATE RICO**
3. **BREACH OF FIDUCIARY DUTY**
4. **AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**
5. **FRAUD**
6. **AIDING AND ABETTING FRAUD**
7. **FRAUDULENT TRANSFER**
8. **AIDING AND ABETTING FRAUDULENT TRANSFER**
9. **CONVERSTION**
10. **CIVIL CONSPIRACY**
11. **CONSTRUCTIVE TRUST**
12. **RESULTING TRUST**
13. **UNJUST ENRICHMENT**

**[Demand for Jury Trial]**

Bradford Billet ("Bradford"), alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims asserted in this action relate to and arise under the Racketeering Influenced and Corruption Organization Act (RICO) [18 U.S.C. §§ 1961, 1964]

2. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the state law claims asserted herein in that those claims form part of the same case or controversy under Article III of the United States Constitution as the claims arising under federal law.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Plaintiff is informed and believes that Defendants are subject to personal jurisdiction in this District and a substantial part of the events giving rise to the claims asserted occurred in this District.

## INTRODUCTORY ALLEGATIONS

4. This action arises from Defendants' complex scheme involving wire fraud, tax fraud and embezzlement for the purpose of concealing, diverting and dissipating marital assets to deprive Bradford of his rightful share of those assets.

5. Bradford and Defendant Jodi Billet were married on October 19, 1996.

6. During their marriage, Bradford and Jodi lived at all times in New York City.

7. During the marriage, Jodi was deeply involved in a nutritional supplement and vitamin business hereinafter referred to as "The Country Life Group" or "The Country Life Business." Jodi acquired a majority of her interests in the business during the marriage, assisted in its oversight and management, and enjoyed its appreciation.

8. In 2005, Jodi and her father, defendant Halbert Drexler ("Halbert"), her brother, defendant Ryan Drexler ("Ryan"), and her mother, defendant Estate of Francine Drexler, entered into negotiations to sell The Country Life Group to Kikkoman Corporation for approximately $100,000,000.00.

9. In 2005 and 2006 Jodi was entitled to receive cash and securities from the sale of the Country Life Business.

10. Thereafter, the Drexler's entered into and carried out a scheme using secrecy, complex financial manipulation, money laundering, embezzlement and outright fraud, all for the purpose of depriving Bradford of his right to marital assets.

11. Halbert and the other Defendants carried out their scheme and plan to conceal Jodi's interests in The Country Life Group from Bradford by reorganizing the ownership structure into a new group of entities referred to in this complaint as the "Consac Companies." That conspiracy to divert assets rightfully belonging to Bradford is ongoing and Jodi's assets are being further secreted and dissipated.

12. The principal architects of the scheme were the Drexlers. However, they did not act alone. They formed various entities and trusts to secrete and divert monies, and to cover their tracks. This corporate shell game required the assistance of trustees willing to go along with the scheme, such as Jarod Kahn and Sasha Greene.

13. It also required the active assistance of financial professionals who helped the Drexlers design and carry out their scheme to deprive Bradford of millions of dollars of marital assets. These professionals include Dennis Duban, an accountant, financier and notorious fraudster, who was subsequently convicted for engaging in similar financial manipulations as he performed for the Drexlers. They also include Franklin Montgomery, an "asset protection" specialist, and Michael Cirenza, a former CFO of the Country Life Business, installed in a public accounting firm to provide "advice" to the Drexlers about their scheme.

14. Bradford brings this action to untangle the Defendants' web of deceit, to expose their wrongdoing, and to recover and restore diverted marital property and other damages.

**THE PARTIES**

15. Plaintiff Bradford Billet is an individual domiciled in and a resident of New York.

16. Defendant Jodi Drexler-Billet ("Jodi") is domiciled in and a resident of New York.

17. Plaintiff is informed and believes that Defendant Halbert Drexler ("Halbert") is a resident of Los Angeles County, state of California, and is the father of Jodi.

18. Plaintiff is informed and believes that Defendant Ryan Drexler ("Ryan") (Jodi's brother and Halbert's son) is a resident of Los Angeles County, state of California. Plaintiff is informed and believes that Ryan is the trustee of the Ryan Drexler (2006) Long-Term Trust.

19. Estate of Francine Drexler ("Francine Estate") is the estate of Francine Drexler (Jodi's mother). **Upon information and belief, Ryan is the executor of the Francine Estate.**

20. Together, Jodi, Halbert, Ryan, and the Francine Estate are referred herein as the "Drexler Defendants."

21. Plaintiff is informed and believes that Jodi-Drexler Billet (2006) Dynasty Trust ("Dynasty Trust") is a trust formed in New York under the laws of the State of New York

22. Plaintiff is informed and believes that Jodi Drexler-Billet (2006) Long Term Trust (the "Jodi LT Trust" is a trust formed in New York under the laws of the State of Missouri.

23. Plaintiff is informed and believes that Amagansett (2006) LLC is a limited liability company organized under the laws of the State of Delaware, with its principle place of business in New York.

24. Plaintiff is informed and believes that Bridgehampton (2006) LLC ("Bridgehampton"), is a limited liability company organized under the laws of the State of Delaware, with its principle place of business in New York.

25. Plaintiff is informed and believes that Westhampton (2006) LLC ("Westhampton") is a limited liability company organized under the laws of the State of Delaware, with its principle place of business in New York.

26. Together, the LT Trust, the Dynasty Trust, Amagansett, Bridgehampton, and Westhampton are referred herein as the "Trust Defendants."

27. Plaintiff is informed and believes that Country Life, LLC is a limited liability company organized under the laws of the New York, with its principle place of business in New York.

28. Plaintiff is informed and believes that Country Life Manufacturing LLC is a limited liability company organized under the laws of the State of New York, with its principle place of business in New York.

29. Plaintiff is informed and believes that Sabre Street, LLC is a limited liability company organized under the laws of the State of New York, with its principle place of business in New York.

30. Plaintiff is informed and believes that Consac Industries, Inc. is a limited liability company organized under the laws of the State of New York, with its principle place of business in New York.

31. Plaintiff is informed and believes that Motor Parkway LLC is a limited liability company organized under the laws of the State of New York, with its principle place of business in New York.

32. Plaintiff is informed and believes that Drexler Associates LLC is a limited liability company organized under the laws of the State of New York, with its principle place of business in New York.

33. Plaintiff is informed and believes that Consac LLC, DE, is a limited liability company organized under the laws of the State of Delaware, with its principle place of business in New York.

34. Plaintiff is informed and believes that Consac LLC, NY is a limited liability company organized under the laws of the State of New York, with its principle place of business in New York.

35. Plaintiff is informed and believes that Consac RE LLC is a limited liability company organized under the laws of the New York, with its principle place of business in New York.

36. Plaintiff is informed and believes that Consac Manager LLC is a limited liability company organized under the laws of the State of New York, with its principle place of business in New York.

37. Together, Consac LLC, DE, Consac LLC, NY, Consac RE LLC, and Consac Manager LLC are referred to herein as the “Consac Defendants” or the “Consac Companies”

38. Together, the Consac Companies, along with Country Life, LLC, Country Life Manufacturing LLC, Sabre Street, LLC, Consac Industries, Inc., Motor Parkway LLC, and Drexler Associates LLC, are the “Drexler Entity Defendants.”

39. Plaintiff is informed and believes that Dennis Duban is an individual resident in California.

40. Plaintiff is informed and believes that Troy L. Sattler is an individual resident in California

41. Plaintiff is informed and believes that Matt LaRochelle is an individual resident in California.

42. Plaintiff is informed and believes that Helene Nishizawa is an individual resident in California.

43. Plaintiff is informed and believes that Rick Thiedig is an individual resident in California.

44. Plaintiff is informed and believes that DLD Accountancy LLP is a limited liability partnership organized under the laws of the State of California, with its principle place of business in California.

45. Plaintiff is informed and believes that Duban Accountancy, LLP is a limited liability partnership organized under the laws of the State of California, with its principle place of business in California.

46. Plaintiff is informed and believes that Duban Sattler and Associates, LLP is a limited liability partnership organized under the laws of the State of California, with its principle place of business in California.

47. Plaintiff is informed and believes that Duban Sattler and Associates, LLC is a limited liability company organized under the laws of the State of California, with its principle place of business in California.

48. Plaintiff is informed and believes that Sattler Capital Management, LLC is a limited liability company organized under the laws of the State of California, with its principle place of business in California.

49. Dennis Duban, Troy L. Sattler, Matt LaRochelle, Helene Nishizawa, Rick Thiedig, DLD Accountancy LLP, Duban Accountancy, LLP, Duban Sattler and Associates, LLP, Duban Sattler and Associates, LLC, and Sattler Capital Management, LLC are referred to herein as the "Duban Defendants."

50. MusclePharm Corp. is a corporation organized under the laws of the State of Delaware, with its principle place of business in Colorado.

51. Franklin Montgomery is an individual resident in the State of New York with an address at 30 Vesey St # 7, New York, NY 10007.

52. Jarrod Kahn is an individual resident in the State of New York.

53. Michael E. Cirenza is an individual resident in the State of New York.

54. Anchin Block and Anchin ("Anchin"), is a limited liability partnership organized under the laws of the State of Delaware, with its principle place of business in New York.

55. Plaintiff is informed and believes Sasha Greene is a resident of the State of New York, and is the Dynasty Trust and the Trust Advisor of the "Jodi LT Trust.

56. Together, Franklin Montgomery, Jarrod Kahn, Michael E. Cirenza, Anchin, and Sasha Greene are referred to herein as the "Financial Consultant Defendants."

57. The true names and capacities of Defendants DOES 1 through 100, inclusive, and each of them, are presently unknown to Bradford, and Bradford therefore sues said defendants by such fictitious names. Bradford will seek leave of Court to amend this pleading to allege the true names and capacities of said defendants when ascertained. Bradford is informed and believes and thereon alleges that each of said DOE defendants performed, participated in, abetted in some manner, or is otherwise responsible in some manner for the conduct alleged herein and is liable to Bradford for the relief sought in this Complaint. Except as otherwise stated, all defendants shall be referred herein after collectively as "Defendants."

58. Bradford is informed and believes and thereon alleges that each of the defendants is now, and has been at all times herein mentioned, the agent, servant, employee, partner, associate, joint venture, co-participant, and/or principal of or with each of the remaining Defendants, including the DOE Defendants, and that each Defendant has been, at all times herein mentioned, acting within the scope of such relationship and with the full knowledge, consent, authority, ratification, and/or permission of each of the remaining Defendants.

**FACTS SUPPORTING ALL CLAIMS FOR RELIEF**

**Country Life LLC and Related Companies**

59. The Country Life Business was a distributor of vitamins, minerals, nutritional supplements, herbal teas and natural body care products primarily to health stores and other retail outlets.

60. Plaintiff is informed and believes, and thereon alleges, that as of the date of Bradford and Jodi's marriage in 1996, Jodi had only a partial interest in what was then the Country Life Group, primarily through her ownership interests in two entities, Drexler Associates and Consac Industries, Inc.

61. Plaintiff is informed and believes, and thereon alleges that following the marriage, Jodi co-founded and acquired interests in other entities and assets that became part of the Country Life Group, including an interest in Country Life Manufacturing, LLC, which manufactured and packaged nutritional supplements for the overall business. She also acquired additional interests in Drexler Associates.

62. Bradford is informed and believes, and thereon alleges, that another company Jodi co-founded after the marriage, Sabre Street LLC, purchased land and a building in Hayward, California. Sabre Street LLC sold its California property in 2001.

63. Bradford is informed and believes, and thereon alleges that the sale proceeds from the building in Hayward, California, constituted marital property and were invested in Consac Industries.

64. Bradford is informed and believes, and thereon alleges that Jodi was actively involved in the companies comprising The Country Life Group. She was an officer, director or manager of each company and one of four family members responsible for the management of the entities that made up The Country Life Group.

65. Bradford is informed and believes, and thereon alleges that Jodi oversaw marketing and advertising, as well as product labelling, public relations,

and attended trade shows to market the group of companies. She also was involved in monitoring the cash flow, production and inventory, and was the face of those companies.

**The Drexlers Sell Country Life to Kikkoman for approximately $100,000,000.00**

68. Bradford is informed and believes, and thereon alleges, that by 2005, in part due to the efforts of Jodi, The Country Life Group was worth substantially more than it was at the time of her marriage to Bradford 10 years earlier. Jodi also enjoyed a higher percentage interest in the more valuable group, due to acquisitions of entity interests in the years following the marriage.

69. In or around March 2005, the Drexler Defendants entered into an agreement to sell The Country Life Group to a subsidiary or affiliate of Kikkoman Corporation ("Kikkoman") for nearly $100 million, in two stages.

70. Bradford is informed and believes, and thereon alleges that simultaneous with or just prior to the sale of a portion of The Country Life Group to Kikkoman in March 2005, the assets and liabilities of each of the entities comprising The Country Life Group were commingled and contributed into the Consac Defendants, which had been formed in February 2005.

71. The assets and liabilities of each of the Consac Defendants were then simultaneously further commingled and contributed to another newly formed entity, Country Life LLC.

72. The following year in 2006, Kikkoman purchased the remainder of Country Life, LLC for $50 million.

73. Bradford is informed and believes, and thereon alleges that Jodi's ownership interest in the proceeds of the two sales of Country Life Group, including Country Life, LLC to Kikkoman (totaling approximately $100 million) was almost $31 million, not including accrued interest or appreciation of over 10 years.

**The Diversion of The Sales Proceeds**

74. At the time of the Sales, Bradford and Jodi has been married for nearly a decade, years during which Bradford provided support while Jodi helped build the Country Life Business. Bradford is informed and believes, and thereon alleges, the Drexler Defendants understood that most, if not all, of Jodi's share in the business constituted martial property, but acted in concert together to divert marital assets and to prevent Bradford from receiving his share of marital assets, including proceeds from the sales to Kikkoman.

75. Unbeknownst to Bradford at the time, Bradford is informed and believes, and thereon alleges, that the proceeds from the sale of the Country Life Business, including Country Life, LLC were improperly deposited into the accounts of one or more of the Consac Companies.

76. Unbeknownst to Bradford at the time, Bradford is informed and believes, and thereon alleges that prior to the 2006 sale of Country Life, LLC to Kikkoman, Jodi formed the Trust Defendants (other than Bridgehampton), and indirectly transferred nearly all her interests in the Consac Companies to the Dynasty Trust and Westhampton.

77. However, Bradford is informed and believes and thereon alleges that the Dynasty Trust and Westhampton interests in the Consac Companies were subsequently diverted and/or transferred to the Ryan Drexler (2006) Long-Term Trust ("Ryan LT Trust").

78. Ryan caused Consac, LLC to distribute enormous sums of money to himself and his mother and father, but not to Jodi, to secrete and dissipate Jodi's interest in the proceeds to deprive Bradford of his rightful share.

79. In 2006, Jodi represented to Bradford that she received no cash distributions from her $ 30.6 million share of approximately $100 million in proceeds from the sale of the Country Life Business to Kikkoman in 2005 and

2006, other than a reported indirect payment of approximately $1.5 million for taxes made by others on her behalf.

80. Bradford is informed and believes, and thereon alleges, that Ryan received tens of millions in excess distributions from more than his pro rata share. Meanwhile, although Jodi enjoyed the same share of the Consac Defendants as Ryan, she only received the $1.5 million tax distribution during the same period.

81. Some of the distributions to Ryan occurred during the time when Jodi's interest in the Consac Defendants were held in the Dynasty Trust and Defendant Westhampton. However, neither defendant Sasha Greene (trustee for Dynasty Trust), nor Jarrod Kahn (manager of Westhampton) took any action to preserve or protect the trust assets.

82. The diversion of the Consac Companies' assets to Ryan was carried out as part of a scheme, devised by the Drexler Defendants with assistance of the Duban Defendants, and the Financial Consultant Defendants, to place Jodi's marital assets out of Bradford's reach. The plan involved stripping the Consac Companies of their funds, and parking Jodi's share of the cash with Ryan, effectively placing them outside of Bradford's reach.

83. At the same time, the Consac Defendants, under the direction of the Drexler Defendants, and with the aid and assistance of the Duban Defendants, created and disseminated Form K-1s purporting to show tens of millions of dollars of distributions to Jodi, even though no money was ever received or transferred to any account owned and/or controlled by Jodi.

84. Bradford is informed and believes that Defendants knowingly and deliberately perpetrated a massive tax fraud, under-reporting tens of millions of dollars of income to Ryan. Alternatively, monies were distributed to Jodi, but parked under the control of Ryan to conceal them from Bradford.

85. Bradford is informed and believes, and thereon alleges that the Drexler and Consac Defendants now falsely claim that the excess distributions to Ryan were in fact "loans" to Ryan from Consac, LLC.

86. Bradford is informed and believes, and thereon alleges, that the excess cash distributions and/or loan from the Consac Defendants to Ryan has rendered the Consac Defendants insolvent and/or unable to pay Jodi her fair and proportionate share of distributions, as required by the Consac Companies' operating agreements.

87. Key to the Drexler Defendants' scheme to defraud Bradford of his rights to marital property was Dennis Duban ("Duban"), a disgraced former CPA who ran the Duban Defendants, consisting of various accounting and financial advisory firms, along with certain principals and employees.

88. The Duban Defendants are the accountants for most if not all Defendants after 2005 through the present day.

89. The Duban Defendants conspired with the other defendants to divert millions of dollars of marital assets to Ryan and Halbert. For example, the Duban Defendants are believed to have assisted in the preparation of the misleading Form K-1s, and are believed to have been involved in creating accounting documents showing distributions to Jodi, in compliance with the operating agreements of the Consac Companies, when in fact those monies were illicitly transferred to and secreted with Ryan.

90. Other key participants in the Drexler Defendants' scheme include defendants Franklin Montgomery, Michael E. Cirenza ("Cirenza"), and Anchin. Franklin Montgomery, an "asset protection" specialist, helped set up the Consac Defendants' entities, thus aiding the Drexler Defendants in their scheme to secrete the marital assets.

91. Cirenza, a former CFO of the Country Life Business, was close to Ryan. After leaving the Country Life Business he became a partner at the Anchin

public accounting firm. While at Anchin, he provided advice and assistance to the Drexler Defendants and the Consac Defendants on the structuring of their investments, including (on information and belief) aid and assistance in secreting marital assets from Bradford.

92. Jodi, Ryan, and Halbert continue to this day to conceal Jodi's marital assets in an effort to prevent Bradford from enforcing his legal rights.

93. Because the conspiracy to secrete and conceal Jodi's marital assets is ongoing, Bradford requests that a Resulting Trust be found immediately and that a Constructive Trust be imposed immediately.

94. Although a spousal interest in the marital estate of the other spouse does not normally vest under New York law until divorce, the unique circumstances here (Defendants' deceitful acts of secreting and wasting Jodi's marital assets) require the immediate finding of a vested right, as otherwise the assets will have been completely wasted and dissipated by the time this matter is determined in the ordinary course.

95. Bradford is informed and believes, and thereon alleges that after Ryan diverted sale proceeds from sale of the Country Life Business, he has invested, "loaned" or otherwise laundered the monies to or through other business entities, including a publicly traded company, MusclePharm, Corp., a nutritional supplement company for athletes with products available in 45,000 global outlets. Ryan is currently the chairman, CEO and a controlling shareholder of MusclePharm.

96. According to documents filed with the SEC, on October 9, 2015 Jodi personally guaranteed some or all of two loans, with a total credit facility of $12 million, made by ABN bank to MusclePharm Corp. However, Jodi never disclosed this purported loan guarantee to Bradford, nor did she include it on her Updated Statement of Net Worth that was submitted to the court in her marital litigation.

97. Jodi now claims that she has little or no assets to divide in the divorce proceedings with Bradford.

98. Bradford is informed and believes, and thereon alleges that the Defendants transferred vast amount of money, millions of dollars by wire through the U.S. banking system, and checks thru the U.S. Mail with the assistance of Dennis Duban who was a CPA and who ran an accounting firm called Duban Sattler and Associates, LLP (formerly Duban Accountancy, LLP), in Los Angeles, California.

99. Duban pleaded guilty to conspiracy to defraud the IRS and assisting in the filing of a false federal income tax return before US District Court judge Leslie E. Kobayshi in Honolulu, Hawaii.

100. Bradford is informed and believes, and thereon alleges that the Duban Defendants are the accountants for most of the Drexler Defendants, the Trust Defendants, and the Consac Defendants. The Duban Defendants conspired with and/or aided the other Defendants in their scheme to divert millions of dollars to Ryan and Halbert Drexler. The Duban Defendants were fully aware that the assets which they assisted in diverting belonged to Jodi and Bradford.

101. Upon information and belief, the Duban Defendants created at the Drexler Defendants' request fraudulent tax returns to conceal the millions of dollars of funds diverted to Ryan Drexler, Halbert and Francine Drexler, and recorded distributions to Jodi in order to hide assets.

102. In October 2013, Bradford filed for divorce. In approximately May 2016, Bradford became aware of publicly available information that indicated that, throughout the divorce proceedings, Jodi had made false statements, omissions or had concealed the true status of the disposition of marital assets.

FIRST CLAIM FOR RELIEF

(For Violation of Racketeering Influenced and Corruption Organization Act (RICO) [18 U.S.C. § 1961 *et seq*.] Against all Defendants)

103. Bradford incorporates herein by reference the preceding paragraphs as though set forth herein in full.

104. Defendants are engaged in interstate commerce and engaged and/or participated, directly and/or indirectly, in activities as alleged herein that affected interstate commerce.

105. Defendants, by and through their own conduct and participation and/or through their associations in fact, engaged and/or participated in, directly or indirectly, a pattern of racketeering activity as defined in 18 U.S.C. § 1961(1). Such racketeering activity includes, but is not limited to, violation on multiple occasions of 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), 1344 (bank fraud), and money laundering beginning in early 2005 through the present, by, among other things, using the mails, telephone, facsimile, electronic mail, and/or other devices to perpetrate their scheme of diverting marital assets belonging to Bradford, and depositing such funds in one or more bank accounts opened for the purpose, and/or in furtherance, of Defendants' scheme to embezzle, divert or otherwise take property belonging, or due to Bradford. Defendants' association in fact with one another in the continued conduct of their business constitutes an "enterprise" within the meaning of RICO.

106. Bradford is informed and believes, and thereon alleges that Defendants, as described herein, devised and/or intended to devise a scheme or artifice to defraud and/or injure as alleged herein through use of the United States mails and wires in interstate commerce and otherwise used fraudulent and deceptive means as herein alleged to obtain the property and/or money of Bradford, and to mislead or defraud Bradford.

107. In October 2013, Bradford filed for divorce. It was not until approximately May 2016 when Bradford received documents and information in the public domain, that Bradford became aware of facts that caused him to suspect that Defendants had engaged in a fraudulent scheme to divert and dissipate marital

assets.

108. As a proximate result of Defendants' racketeering activities as described herein, Bradford suffered injury in an amount to be proven at trial, but which is no less than $29,500,000.00.

109. Bradford is informed and believes, and thereon alleges that Defendants' wrongful described herein was done with the intention of depriving Bradford of property or legal rights or otherwise causing injury to Bradford and was despicable conduct that subjected Bradford to unjust hardship in a conscious disregard of his rights. Such conduct was willful, oppressive, fraudulent and malicious in that Defendants and each of them acted and/or failed to act with the intent to injure Bradford and/or in conscious disregard of Bradford's rights. Bradford is therefore entitled to punitive damages.

## SECOND CLAIM FOR RELIEF

(For Conspiracy to Violate RICO Against all Defendants)

110. Bradford incorporates herein the preceding paragraphs as though set forth herein in full.

111. Bradford is informed and believes, and thereon alleges that Defendants, and each of them, conspired and agreed among themselves to violate 18 U.S.C. § 1962 as though set forth in the First Cause of Action above.

112. Bradford is informed and believes and thereon alleges that Defendants, and each of them, further agreed to violate said statute for the purpose of embezzling, diverting or otherwise preventing Bradford from receiving his share of marital assets, or to otherwise injure Bradford.

113. Bradford is informed and believes and thereon alleges that Defendants, and each of them, did the acts alleged herein pursuant to, and in furtherance of, the conspiracy and the above-referenced agreement.

114. Bradford is informed and believes and thereon alleges that each of the Defendants furthered the conspiracy by cooperation with, and/or lent aid and

encouragement to, and/or ratified and adopted the acts alleged herein of, each of the other Defendants. Each of the Defendants is therefore liable for all the acts, omissions, and/or breaches of the others, all of which were done in furtherance of the conspiracy and for the benefit of any or all of the co-conspirators.

115. Bradford is informed and believes, and thereon alleges, that Defendants continue through the present to commit overt acts in furtherance of the above-described conspiracy. As a proximate result of this conspiracy and agreement, Bradford has been damaged, and continues to be damaged, in an amount to be proven at trial, but which is no less than $29,500,000.00.

116. Bradford is informed and believes, and thereon alleges that Defendants' wrongful described herein was done with the intention of depriving Bradford of property or legal rights or otherwise causing injury to Bradford and was despicable conduct that subjected Bradford to unjust hardship in a conscious disregard of his rights. Such conduct was willful, oppressive, fraudulent and malicious in that Defendants and each of them acted and/or failed to act with the intent to injure Bradford and/or in conscious disregard of Bradford's rights. Bradford is therefore entitled to punitive damages.

## THIRD CLAIM FOR RELIEF

(For Breach of Fiduciary Duty Against Jodi and Does 1-10)

117. Bradford incorporates herein the preceding paragraphs as though set forth herein in full.

118. Defendant Jodi Drexler-Billet is the spouse of Bradford Bradford Billet. They were married in 1996.

119. As Bradford's spouse, Jodi owed him fiduciary duties of loyalty and trust under New York state law.

120. Jodi breached her fiduciary duties, and continues to breach those duties to Bradford, by, among other things:

121. transferring and attempting to transfer martial assets to prevent

Bradford from ever asserting his equitable and/or legal rights to such assets,

122. deliberately refraining from exercising her right to have her fair share of the Consac Defendants' assets paid or returned to her, in order to defraud Bradford of his right to those marital assets,

123. conspiring with the other Defendants to carry out a scheme to divert and secrete marital assets from Bradford,

124. Participating in the creation of trusts that would be placed under the control of persons nominated by Ryan, as part of the scheme to divert and secrete marital assets from Bradford,

125. causing the Trust Defendants to be dissolved and conveying annuity rights in which Bradford had a prospective interest, as part of the scheme to divert and secrete marital assets from Bradford.

126. misrepresenting and/or concealing the status, value and/or existence of marital assets

127. As a result of Jodi's breaches of fiduciary duty, Bradford has been damaged in an amount to be determined at trial, but in no event less than $29,500,000.00 plus interest, costs, disbursements and attorneys' fees.

128. Bradford is informed and believes, and thereon alleges that Defendants' wrongful described herein was done with the intention of depriving Bradford of property or legal rights or otherwise causing injury to Bradford and was despicable conduct that subjected Bradford to unjust hardship in a conscious disregard of his rights. Such conduct was willful, oppressive, fraudulent and malicious in that Defendants and each of them acted and/or failed to act with the intent to injure Bradford and/or in conscious disregard of Bradford's rights. Bradford is therefore entitled to punitive damages.

<u>FOURTH CLAIM FOR RELIEF</u>

(For Aiding and Abetting Breach of Fiduciary Duty)

(Against All Defendants Except Jodi and Does 1-10)

129. Bradford incorporates herein the preceding paragraphs as though set forth herein in full.

130. Jodi breached her fiduciary duties, and continues to breach those duties to the Bradford, as previously described above.

131. The remaining Defendants, and each of them, aided and abetted Jodi's breach, and continue to aid and abet those breaches, by, among other things: (a) assisting Jodi in diverting marital assets to themselves or to entities controlled by them; (b) retaining and secreting marital funds sent to them by Jodi, (c) devising a scheme to divert and secrete martial assets to themselves, (d) forming the Consac Companies to carry out the scheme to divert and secrete marital assets, (e) managing or controlling the Trust Defendants to divert and secrete marital assets, (f) helping Jodi to effectuate the surrender cash annuities in exchange for interests in the Consac Companies known to be under the control of Ryan for the purpose of diverting and secreting marital assets, and (g) creating and disseminating false and/or misleading tax documents and accounting disclosures to conceal Jodi's diversion and secretion of marital assets.

132. The Defendants, and each of them, further aided and abetted Jodi's breach, and continue to aid and abet those breaches, by, among other things: (a) assisting Jodi in diverting marital assets to and secreting marital assets with the Drexler Defendants or entities controlled by the Drexler Defendants; (b) assisting the Jodi and the Drexler Defendants in devising a scheme to divert and secrete martial assets to themselves, (c) helping form the Consac Companies to carry out the scheme to divert and secrete marital assets, (d) managing or controlling the Trust Defendants used to divert and secrete marital assets, (e) helping Jodi to effectuate the surrender cash annuities in exchange for interests in the Consac Companies known to be under the control of Ryan for the purpose of diverting and secreting marital assets, and (f) creating and disseminating false and/or misleading

tax documents and accounting disclosures to conceal Jodi's diversion and secretion of marital assets.

133. As a result of Defendants' aiding and abetting of Jodi's breaches of fiduciary duty, Bradford has been damaged in an amount to be determined at trial, but in no event less than $29,500,000.00 plus interest, costs, disbursements and attorneys' fees.

134. Bradford is informed and believes, and thereon alleges that Defendants' wrongful described herein was done with the intention of depriving Bradford of property or legal rights or otherwise causing injury to Bradford and was despicable conduct that subjected Bradford to unjust hardship in a conscious disregard of his rights. Such conduct was willful, oppressive, fraudulent and malicious in that Defendants and each of them acted and/or failed to act with the intent to injure Bradford and/or in conscious disregard of Bradford's rights. Bradford is therefore entitled to punitive damages.

## FIFTH CLAIM FOR RELIEF

(For Fraud Against Jodi and Does 1-10)

135. Bradford incorporates herein the preceding paragraphs as though set forth herein in full.

136. At all times relevant herein, Jodi (as the wife of Bradford) owed a duty to be honest and truthful regarding the value of marital assets of Jodi and Bradford.

137. Beginning in 2005 and continuing to the present, Jodi has concealed, failed to disclose or made false statements about the disposition of marital assets, including but not limited to: continually representing both orally and in writing that there are few, if any marital assets to share; falsely representing that Jodi was not entitled to distributions from the Consac Companies; presenting tax returns which contain false and misleading information that Jodi did receive distributions from the Consac Companies; and failing to disclose that marital assets were diverted to

the Trust Defendants, and/or the Drexler Defendants.

138. Jodi was Bradford's wife, and Bradford had the utmost trust and confidence in Jodi. Bradford had no reason to distrust Jodi or to believe that she misrepresented, omitted or concealed the true status of their marital assets.

139. In October 2013, Bradford filed for divorce. It was not until approximately May 2016 when Bradford received documents and information in the public domain, that Bradford became aware of facts that caused him to suspect that Jodi had made false statements, omissions or had concealed the true status of the disposition of marital assets.

140. At the time that Jodi made the fraudulent statements, omissions and concealments regarding marital assets, she was well aware of the true status of the marital assets. Jodi made the false representations, omissions and concealments with the intent to induce Bradford not to take steps to protect his share of marital assets so that Jodi could succeed in her scheme to divert, embezzle, dissipate or otherwise place such assets out of Bradford's reach.

141. Due to their relationship of trust and confidence, Bradford was unaware of the true status of marital assets and believed that the marital assets would be available for him to enjoy. Had Bradford been aware of the true status of the marital assets, he would have taken steps to protect his marital assets and to prevent their diversion/dissipation by the Defendants.

142. As a result of Jodi's fraudulent statements, omissions and concealments, Bradford has been damaged in an amount according to proof at the time of trial, but which Bradford believes is no less than $29,500,000.00 plus interest.

143. Bradford is informed and believes, and thereon alleges that Defendants' wrongful described herein was done with the intention of depriving Bradford of property or legal rights or otherwise causing injury to Bradford and was despicable conduct that subjected Bradford to unjust hardship in a conscious

disregard of his rights. Such conduct was willful, oppressive, fraudulent and malicious in that Defendants and each of them acted and/or failed to act with the intent to injure Bradford and/or in conscious disregard of Bradford's rights. Bradford is therefore entitled to punitive damages.

SIXTH CLAIM FOR RELIEF

(For Aiding and Abetting Fraud)

(Against All Defendants Except Jodi and Does 1-10)

144. Bradford incorporates herein the preceding paragraphs as though set forth herein in full.

145. Jodi made the fraudulent misrepresentations, omissions and concealments as described above.

146. The remaining Defendants, and each of them aided and abetted Jodi's fraud by, among other things: (a) assisting Jodi in diverting marital assets to themselves or to entities controlled by them; (b) retaining and secreting marital funds sent to them by Jodi, (c) devising a scheme to divert and secrete martial assets to themselves, (d) forming the Consac Companies to carry out the scheme to divert and secrete marital assets, (e) managing or controlling the Trust Defendants to divert and secrete marital assets, (f) helping Jodi to effectuate the surrender cash annuities in exchange for interests in the Consac Companies known to be under the control of Ryan for the purpose of diverting and secreting marital assets, and (g) creating and disseminating false and/or misleading tax documents and accounting disclosures to conceal Jodi's diversion and secretion of marital assets.

147. The Defendants, and each of them, further aided and abetted Jodi's fraud by, among other things: (a) assisting Jodi in diverting marital assets to and secreting marital assets with the Drexler Defendants or entities controlled by the Drexler Defendants; (b) assisting the Jodi and the Drexler Defendants in devising a scheme to divert and secrete martial assets to themselves, (c) helping form the Consac Companies to carry out the scheme to divert and secrete marital assets, (d)

managing or controlling the Trust Defendants used to divert and secrete marital assets, (e) helping Jodi to effectuate the surrender cash annuities in exchange for interests in the Consac Companies known to be under the control of Ryan for the purpose of diverting and secreting marital assets, and (f) creating and disseminating false and/or misleading tax documents and accounting disclosures to conceal Jodi's diversion and secretion of marital assets.

148. As a result of Defendants' aiding and abetting of Jodi's breaches of fiduciary duty, Bradford has been damaged in an amount to be determined at trial, but in no event less than $29,500,000.00 plus interest, costs, disbursements and attorneys' fees.

149. Bradford is informed and believes, and thereon alleges that Defendants' wrongful described herein was done with the intention of depriving Bradford of property or legal rights or otherwise causing injury to Bradford and was despicable conduct that subjected Bradford to unjust hardship in a conscious disregard of his rights. Such conduct was willful, oppressive, fraudulent and malicious in that Defendants and each of them acted and/or failed to act with the intent to injure Bradford and/or in conscious disregard of Bradford's rights. Bradford is therefore entitled to punitive damages.

## SEVENTH CLAIM FOR RELIEF

(For Fraudulent Transfer Against the Drexler Defendants, the Trust Defendants, the Consac Defendants, MusclePharm and Does 1-50)

150. Bradford incorporates herein the preceding paragraphs as though set forth herein in full.

151. The Drexler Defendants conspired to transfer and transferred marital assets, namely Jodi's percentage of the proceeds from the First Sale and the Second Sale, and her interests in the Consac Defendants, into various Defendant-controlled trusts and entities, MusclePharm, and to Ryan personally.

152. At the direction of the Drexler Defendants, the Consac Defendants made a series of transfers to Ryan, the result of which rendered the Consac Defendants insolvent, and in particular, unable to distribute to Jodi her pro rata share of distributions, such share of which constituted marital assets in whole or in part.

153. The transfers made by the Consac Defendants to Ryan were made as part of a scheme to divert and secrete the marital assets. Thus, even with respect to transfers that did not themselves render the Consac Defendants insolvent, such transfers were made with the knowledge of the Consac Defendants and the Drexler Defendants that the Consac Defendants would incur additional debts beyond their ability to pay as they mature, thus rendering them unable to distribute to Jodi her pro rata share of distributions, such share of which constituted marital assets in whole or in part.

154. The transfer and conveyance described herein were additionally made or caused to be made by the Drexler Defendants and the Consac Defendants with the intent to defraud Bradford as a future creditor with respect to the marital assets.

155. The Drexler Defendants also caused the Trust Defendants to transfer marital assets in the form of valuable annuities to the Consac Defendants in return for Jodi's prior interests in the Consac Defendants, knowing that her share of the cash associated with those interests had been or would be diverted and secreted to Ryan. These transfers were made or caused to be made with the deliberate intent to defraud Bradford as a future creditor with respect to the marital assets.

156. There was no fair consideration for any of the above-referenced conveyances.

157. As a result of the fraudulent conveyances of marital assets, Bradford has been damaged in an amount to be determined at trial, which amount is not less than $29,500,000.00.

158. Bradford is informed and believes, and thereon alleges that

Defendants' wrongful described herein was done with the intention of depriving Bradford of property or legal rights or otherwise causing injury to Bradford and was despicable conduct that subjected Bradford to unjust hardship in a conscious disregard of his rights. Such conduct was willful, oppressive, fraudulent and malicious in that Defendants and each of them acted and/or failed to act with the intent to injure Bradford and/or in conscious disregard of Bradford's rights. Bradford is therefore entitled to punitive damages.

EIGHTH CLAIM FOR RELIEF

(For Aiding and Abetting Fraudulent Transfer)

(Against the Financial Consultant Defendants, the

Duban Defendants and Does 51-100)

159. Bradford incorporates herein the preceding paragraphs as though set forth herein in full.

160. Between 2005 and the present, Jodi transferred marital assets as described herein in violation of California Civil Code 3439 et seq. and the common law.

161. The remaining Defendants, and each of them aided and abetted the transfer of assets by, among other things: (a) assisting the Drexler Defendants, the Consac Defendant, the Trust Defendants and MusclePharm in diverting marital assets to themselves or to entities controlled by them; (b) retaining and secreting marital funds sent to them by Jodi, (c) devising a scheme to divert and secrete martial assets to themselves, (d) forming the Consac Companies to carry out the scheme to divert and secrete marital assets, (e) managing or controlling the Trust Defendants to divert and secrete marital assets, (f) helping Jodi to effectuate the surrender cash annuities in exchange for interests in the Consac Companies known to be under the control of Ryan for the purpose of diverting and secreting marital assets, and (g) creating and disseminating false and/or misleading tax documents

and accounting disclosures to conceal Jodi's diversion and secretion of marital assets.

162. The Defendants, and each of them, further aided and abetted Jodi's fraud by, among other things: (a) assisting Jodi in diverting marital assets to and secreting marital assets with the Drexler Defendants or entities controlled by the Drexler Defendants; (b) assisting the Jodi and the Drexler Defendants in devising a scheme to divert and secrete martial assets to themselves, (c) helping form the Consac Companies to carry out the scheme to divert and secrete marital assets, (d) managing or controlling the Trust Defendants used to divert and secrete marital assets, (e) helping Jodi to effectuate the surrender cash annuities in exchange for interests in the Consac Companies known to be under the control of Ryan for the purpose of diverting and secreting marital assets, and (f) creating and disseminating false and/or misleading tax documents and accounting disclosures to conceal Jodi's diversion and secretion of marital assets.

163. As a result of the Defendants' conduct, Bradford has been damaged in an amount to be determined at trial, which amount is not less than $29,500,000.

164. Bradford is informed and believes, and thereon alleges that Defendants' wrongful described herein was done with the intention of depriving Bradford of property or legal rights or otherwise causing injury to Bradford and was despicable conduct that subjected Bradford to unjust hardship in a conscious disregard of his rights. Such conduct was willful, oppressive, fraudulent and malicious in that Defendants and each of them acted and/or failed to act with the intent to injure Bradford and/or in conscious disregard of Bradford's rights. Bradford is therefore entitled to punitive damages.

<u>NINTH CLAIM FOR RELIEF</u>

(For Conversion Against All Defendants Except Jodi)

165. Bradford incorporates herein the preceding paragraphs as though set forth herein in full.

166. At all times herein mentioned, Bradford was and still is entitled to possession of his share of marital assets.

167. Bradford is informed and believes, and thereon alleges that beginning in 2005 and continuing to the present, the Drexler Defendants, the Trust Defendants, the Consac Defendants and MusclePharm diverted or caused marital assets to be diverted to each of them, and wrongfully converted the marital assets to their own use with the aid and assistance of the Duban Defendants and the Financial Consultant Defendants.

168. For their part, the Duban Defendants and Financial Consultant Defendants were aware at all relevant times that the assets which were diverted to the other Defendants belonged to the marital estate of Bradford and Jodi, and that the marital assets were being diverted/dissipated for the purpose of depriving Bradford of his right to receive and enjoy the marital assets.

169. As a result of the Defendants' conduct, Bradford has been damaged in an amount to be determined at trial, which amount is not less than $29,500,000.

170. Bradford is informed and believes, and thereon alleges that Defendants' wrongful described herein was done with the intention of depriving Bradford of property or legal rights or otherwise causing injury to Bradford and was despicable conduct that subjected Bradford to unjust hardship in a conscious disregard of his rights. Such conduct was willful, oppressive, fraudulent and malicious in that Defendants and each of them acted and/or failed to act with the intent to injure Bradford and/or in conscious disregard of Bradford's rights. Bradford is therefore entitled to punitive damages.

<u>TENTH CLAIM FOR RELIEF</u>

(For Civil Conspiracy Against All Defendants)

171. Bradford incorporates herein the preceding paragraphs as though set forth herein in full.

172. Bradford is informed and believes, and thereon alleges, that the Defendants, and each of them, conspired and agreed among themselves to commit the wrongful acts alleged herein, including diverting, secreting and dissipating Jodi's substantial marital assets to which Bradford could rightfully claim an equitable share in order to deprive Bradford of his marital property rights

173. Bradford is informed and believes, and thereon alleges that Defendants, and each of them, further agreed to commit such wrongful acts for the purpose of preventing Bradford from receiving his share of marital assets.

174. Bradford is informed and believes, and thereon alleges that Defendants, and each of them, did the acts alleged herein pursuant to, and in furtherance of, the conspiracy and above-alleged agreement.

175. Bradford is informed and believes, and thereon alleges that each of the defendants furthered the conspiracy by cooperation with, and/or lent aid and encouragement to, and/or ratified and adopted the acts alleged herein of, each of the other Defendants. Each of the Defendants is therefore liable for all the acts, omissions, and/or breaches of the others, all of which were done in furtherance of the conspiracy and for the benefit of any or all of the co-conspirators.

176. Bradford is informed and believes, and thereon alleges that Defendants continue through the present to commit overt acts in furtherance of the above-described conspiracy. As a proximate result of this conspiracy ad agreement, Bradford has been damaged in an amount according to proof at the time of trial, but which is no less than $29,500,000.00

177. Because the conspiracy to hide Jodi's marital assets is ongoing and those assets are being wasted and dissipated, Bradford requests that a Resulting Trust be declared immediately and that a Constructive Trust be imposed immediately.

178. Bradford is informed and believes, and thereon alleges that Defendants' wrongful described herein was done with the intention of depriving

Bradford of property or legal rights or otherwise causing injury to Bradford and was despicable conduct that subjected Bradford to unjust hardship in a conscious disregard of his rights. Such conduct was willful, oppressive, fraudulent and malicious in that Defendants and each of them acted and/or failed to act with the intent to injure Bradford and/or in conscious disregard of Bradford's rights. Bradford is therefore entitled to punitive damages.

ELEVENTH CLAIM FOR RELIEF

(Constructive Trust Against all Defendants)

179. Bradford repeats and realleges each and every allegation set forth above with the same force and effect as if fully stated herein.

180. A constructive trust is an equitable remedy and may be imposed when property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest.

181. As a result, Bradford is entitled to the imposition of a constructive trust upon monies held by Consac, LLC, and monies and property held by Ryan, Halbert, and the Estate of Francine Drexler in an amount equal to the wrongful distributions to them by Consac, LLC.

TWELFTH CLAIM FOR RELIEF

(Resulting Trust Against all Defendants)

182. Bradford repeats and realleges each and every allegation set forth above with the same force and effect as if fully stated herein.

183. Ryan, Halbert, and the Estate of Francine Drexler took possession of the marital property in which Bradford has a right without Bradford's consent or knowledge.

184. Ryan caused Consac, LLC to purchase property with the money of Jodi.

185. Bradford is entitled to the imposition of a resulting trust upon the assets of the Defendants in an amount equal to the wrongful distributions from Consac, LLC, plus interest, costs, disbursements and attorneys' fees.

THIRTEENTH CLAIM FOR RELIEF

(Unjust Enrichment Against All Defendants)

186. Bradford repeats and realleges each and every allegation set forth above with the same force and effect as if fully stated herein.

187. Defendants have been enriched unjustly at Bradford's expense and it is against equity and good conscience to permit them to retain what was wrongfully obtained.

188. As a result of Defendants' conduct, Bradford has been damaged in an amount to be determined at trial, but in no event less than $29,500,000 plus interest, costs, disbursements and attorneys' fees.

**PRAYER**

WHEREFORE, Bradford demands judgment in his favor and against the defendants

as follows:

On the First through Tenth and Thirteenth Claims for Relief:

1. Compensatory damages in an amount according to proof at the time of trial, which amount is not less than $29,500.00;

2. Prejudgment interest according to proof;

3. Punitive damages in an amount according to proof.

On the Eleventh Claim for Relief:

1. Imposition of a constructive trust upon monies held by Consac, LLC, and monies and property held by Ryan, Halbert, and the Estate of Francine Drexler in an amount equal to the wrongful distributions to them by Consac, LLC.;

On the Twelfth Claim for Relief:



LAW OFFICES OF M. CANDICE BRYNER
A PROFESSIONAL CORPORATION

1. Imposition of a resulting trust upon the assets of the Defendants in an amount equal to the wrongful distributions from Consac, LLC;

On all Claims for Relief:

1. Costs of suit incurred;
2. For an injunction preventing Defendants from further transferring, diverting or dissipating marital assets;
3. Such other relief as the Court may deem proper.

LAW OFFICES OF M. CANDICE BRYNER
A PROFESSIONAL CORPORATION

DATED: October 27, 2017

M. CANDICE BRYNER
Attorney for Plaintiff Bradford Billet

**JURY DEMAND**

Plaintiff requests trial by jury on all issues so triable.

LAW OFFICES OF M. CANDICE BRYNER
A PROFESSIONAL CORPORATION

DATED: October 27, 2017

M. CANDICE BRYNER
Attorney for Plaintiff Bradford Billet